IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ESTATE OF JOSHUA S. MCCLEARY, ) | |
| B/N/K, OMARII MCCLEARY, son and ) | |
| Personal Representative of Estate ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | **JURY DEMANDED** |
| QCHC OF TENNESSEE, PLLC., QCHC, INC. ) | |
| QCHC MANAGEMENT SERVICES ) | |
| COMPANY, INC., LADONNA HUBBARD, ) | |
| ASHLEY BROWN, PAM HOLLINGSHEAD, ) | |
| NURSE JULIE, HOLLY CANTRELL, ) | |
| SHERRY RICHESIN, ) | |
| JOHNNY BATES, individually and officially ) | |
| DONALD C. KERN, individually and officially ) | |
| SWEETWATER HOSPITAL ASSOCIATION ) | |
| MONROE COUNTY, TENNESSEE, ) | |
| OFFICER NOAH KELLY, OFFICER OWEN ) | |
| HOOPER, OFFICER CODY HARRILL, ) | |
| OFFICER BLAINE KENNEDY, OFFICER ) | |
| DAVID HANNAH, OFFICER RILEY ) | |
| TURPEINEN, OFFICER BRENT PLEMONS, ) | |
| OFFICER THOMAS GRINDLE, ) | |
| OFFICER COLBY WILLIAMS, ) | |
| OFFICER PATRICIA STEPHENS ) | |
| OFFICER TOMMY REAGAN, ) | |
| OFFICER JENNA WEBB, OFFICER JOSH ) | |
| DUNCAN, OFFICER DAVID ANTHONY, ) | |
| OFFICER JERRON HENRY ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

Comes the Plaintiff, OMARII MCCLEARY, son, personal representative of the ESTATE OF JOSHUA MCCLEARY and its beneficiaries and files this Complaint against the named Defendants and would show the Court as follows:

1

# I.     INTRODUCTION

1. Concerning Defendants, QCHC OF TENNESSEE, PLLC., QCHC, INC., QCHC MANAGEMENT SERVICES COMPANY, INC., LADONNA HUBBARD, ASHLEY BROWN, PAM HOLLINGSHEAD, SHERRY RICHESIN, NURSE JULIE, HOLLY CANTRELL, JOHNNY BATES, individually and officially, and DONALD C. KERN, individually and officially, (collectively referred to as the "QCHC Defendants") this is a civil rights action based upon a violation of Plaintiff's Fourteenth (or alternatively 8th) Amendment rights pursuant to 42 U.S.C. § 1983 due to the deliberate indifference of QCHC Defendants to the Plaintiff's serious medical needs, while he was a pretrial detainee from October 28, 2022 to October 31, 2022, in the Monroe County Jail and which ultimately led to his untimely death on November 3, 2022.

2. Concerning Defendants, MONROE COUNTY, TENNESSEE, OFFICER NOAH KELLY, OFFICER OWEN HOOPER, OFFICER CODY HARRILL, OFFICER BLAINE KENNEDY, OFFICER DAVID HANNAH, OFFICER RILEY TURPEINEN, OFFICER BRENT PLEMONS, OFFICER THOMAS GRINDLE, OFFICER COLBY WILLIAMS, OFFICER PATRICIA STEPHENS, OFFICER TOMMY REAGAN, OFFICER JOSH DUNCAN, OFFICER JERRON HENRY, OFFICER DAVID ANTHONY, OFFICER JENNA WEBB (collectively referred to as the "County Defendants"), this is a civil rights action based upon a violation of Plaintiff's Fourteenth (or alternatively 8th) Amendment rights pursuant to 42 U.S.C. § 1983 due to the deliberate indifference of QCHC Defendants to the Plaintiff's serious medical needs, while he was a pretrial detainee from October 28, 2022 to October 31, 2022, in the Monroe County Jail and which ultimately led to his untimely death on November 3, 2022.

3. And this is an action for liability for failure to follow protocols of the Emergency Medical Treatment and Active Labor Act ("EMTALA", 42 U.S.C. §1395dd), for damages and attorney's fees against Sweetwater Hospital Association (hereinafter "SWHA").

## II. JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983.

## III. PARTIES

5. Plaintiff OMARII MCCLEARY is the oldest son of Decedent, JOSHUA SHAUNTELE MCCLEARY (hereinafter referred to as the "Decedent") and the court-appointed personal representative of the ESTATE OF JOSHUA MCCLEARY and Decedent's beneficiaries. At all times relevant Decedent was a resident of Monroe County, Tennessee and a detainee in the Monroe County jail.

6. Defendant, QCHC OF TENNESSEE, INC. (now QCHC of Tennessee, PLLC), is an Alabama for profit corporation, qualified to do business in Tennessee. Its registered agent for service of process is Incorp Services, Inc., 1585 Mallory LN, Suite 104, Brentwood, Tennessee 37027. Upon information and belief, its corporate headquarters is located at 200 Narrows Parkway, Suite A, Birmingham, Alabama 35242. Upon information and belief, Defendant Johnny Bates is the sole member of this PLLC. Defendant, QCHC, INC., is an Alabama for profit corporation that is authorized to do business in Tennessee. Its mailing address and principal office is 200 Narrows PKWY, STE A, Birmingham, Alabama 35242. The registered agent is Incorp Services, Inc., 1585 Mallory LN, Ste 104, Brentwood, TN 37027. Defendant, QCHC MANAGEMENT SERVICES COMPANY, INC., is an Alabama for profit corporation authorized to do business in Tennessee. Its mailing address and principal office is 200 Narrows PKWY, STE A, Birmingham, Alabama

35242. The registered agent is Incorp Services, Inc., 1585 Mallory LN, Ste 104, Brentwood, TN 37027. It is believed that these Defendants share common managers, common owners, and common control over the policies and personnel decisions and medical services they provide and provide the agents and/or employees, medical services and policies pursuant to the Agreement for the Provision of Healthcare Services for the Inmates of the Monroe County Jail. These Defendants will be collectively referred to as "QCHC."

7. Defendants JOHNNY BATES and DONALD KERN were at all times relevant medical doctors, agents, servants or employees of QCHC and as such had responsibilities to properly diagnose and treat persons such as Decedent and further responsibilities to supervise nurses and other health care providers, agents, servants or employees and others at the Monroe County Jail and to see that they provided constitutionally appropriate medical care to meet the detainees' serious medical needs. Defendants BATES and/or KERN were the Medical Directors at the Monroe County jail. Defendants BATES and KERN can be served at 200 Narrows Parkway, Birmingham, Alabama 35242. These Defendants are sued individually and in their official capacity.

8. Defendant, HOLLY CANTRELL, was at all times relevant a registered nurse and was an agent, servant or employee of QCHC and had responsibilities to provide constitutionally appropriate health care to Decedent. Upon information and belief, Defendant Cantrell was also a supervisor of the medical staff at the Monroe County jail.

9. Defendant, PAM HOLLINGSHEAD, was at all times relevant a licensed practical nurse and was an agent, servant or employee of QCHC and had responsibilities to provide constitutionally appropriate health care to Decedent.

10. Defendant LADONNA HUBBARD was at all times relevant a nurse practitioner and agent, servant or employee of the QCHC. Hubbard had responsibilities to diagnose and treat persons such as Decedent and further responsibilities to supervise and see that other employees and/or agents of the QCHC provided constitutionally appropriate medical care to detainees such as the Plaintiff. It is believed Defendant HUBBARD can be served with process at 1859 Poplar Hill Road, Knoxville, Tennessee 37922.

11. Defendant, SHERI RICHESIN, was at all times relevant a licensed practical nurse and was an agent, servant or employee of QCHC and had responsibilities to provide constitutionally appropriate health care to Decedent.

12. Defendant, NURSE JULIE, was at all times relevant a licensed practical nurse and was an agent, servant or employee of QCHC and had responsibilities to provide constitutionally appropriate health care to Decedent.

13. Defendant ASHLEY BROWN was at all times relevant a licensed practical nurse and was an agent, servant or employee of the QCHC and had responsibilities to provide constitutionally appropriate health care to Decedent. Defendant Cantrell can be served with process at 7480 Middle Butler Road, Collinwood, Tennessee 38450.

14. Defendant, SWEETWATER HOSPITAL ASSOCIATION, (hereinafter "SWHA") is located at 304 Church Street, Sweetwater, Monroe County, Tennessee 37874 and its registered agent is listed as Ian McFadden. The current interim Chief Executive Officer is Andrea Henry. At all times relevant, SWHA was a public hospital existing under the laws of the State of Tennessee and has an emergency department that is open and staffed 7 days a week, 24 hours a day.

15. Defendant, MONROE COUNTY, TENNESSEE, is a political subdivision of the State of Tennessee pursuant to T.C.A. § 5-1-101 and can be served process through the County

5

Mayor, Mitch Ingraham, 105 College Street, Suite 1, Madisonville, Tennessee 37354. Monroe County is responsible for providing constitutionally appropriate professional and responsive health care to the detainees in the Monroe County jail.

16. QCHC contracted with the Monroe County, Tennessee on or about March 2021 to provide constitutionally appropriate medical services to the inmates and detainees in the Monroe County Jail and was responsible for providing such services at all times relevant herein. At all times relevant, Decedent was a detainee at the Monroe County jail.

17. Defendants, OFFICER NOAH KELLY, OFFICER OWEN HOOPER, OFFICER CODY HARRILL, OFFICER BLAINE KENNEDY, OFFICER DAVID HANNAH, OFFICER RILEY TURPEINEN, OFFICER BRENT PLEMONS, OFFICER THOMAS GRINDLE, OFFICER COLBY WILLIAMS, OFFICER PATRICIA STEPHENS, OFFICER TOMMY REAGAN, OFFICER JOSH DUNCAN, OFFICER JERRON HENRY, OFFICER DAVID ANTHONEY, OFFICER JENNA WEBB, at all times relevant herein were corrections officers employed by Monroe County, Tennessee.

## IV. FACTS

18. Each of the above-listed Defendants, at all times relevant herein, acted under color of law and under the customs and usages of the State of Tennessee.

19. In March 2021, QCHC entered into an Agreement for the Provision of Healthcare Services for the inmates and detainees of the Monroe County Jail (hereinafter the "Agreement") with Monroe County, Tennessee. QCHC contracted with Monroe County, Tennessee to be solely responsible "to provide for the delivery of healthcare services to the detainees under the custody and control of the Sheriff at the jail."

20. Further, the Agreement provided in part, that QCHC would provide medical services "within a reasonable time of the request for care" and it is responsible for the primary healthcare services for all persons committed to the custody of the jail." QCHC's responsibility for the medical care of a detainee "commence[d] with the booking and physical placement of the detainee into the jail."

21. The Agreement further provided that QCHC "will provide the staffing coverage necessary for the rendering of primary healthcare services to the detainee" and was responsible to provide 24 hour, 7 days a week nursing staffing on a 12-hour shift. The day-time shift beginning at 7:00 a.m. and ending at 7:30 p.m. and the night-time shift beginning at 7:00 p.m. and ending at 7:30 a.m. The "on-site nursing coverage" consisted of Registered Nurses and Licensed Practical Nurses. QCHC was also responsible to provide blood sugar testing and the supply necessary medications for the inmates or detainees, which included medication to control diabetes.

22. The schedule requirements of the Agreement were as follows:

- On Friday, QCHC was to provide a Registered Nurse from 8:00 a.m. to 4:30 p.m. and a day time Licensed Practical Nurse (LPN) from 7:00 a.m. to 7:30 p.m. and a night shift LPN from 7:00 p.m. to 7:30 a.m. the following morning.

- On Saturday, QCHC was to provide a day-time Licensed Practical Nurse (LPN) from 7:00 a.m. to 7:30 p.m. and a night-time LPN from 7:00 p.m. to 7:30 a.m. the following morning.

- On Sunday, QCHC was to provide a day-time Licensed Practical Nurse (LPN) from 7:00 a.m. to 7:30 p.m. and a night-time LPN from 7:00 p.m. to 7:30 a.m. the following morning.

- On Monday, QCHC was to provide a Registered Nurse from 8:00 a.m. to 4:30 p.m. and a day-time Licensed Practical Nurse (LPN) from 7:00 a.m. to 7:30 p.m. and a night-time LPN from 7:00 p.m. to 7:30 a.m. the following morning.

23. The Agreement further provided that QCHC would provide a MEDICAL DIRECTOR who was a "QCHC physician," who is "responsible for all medical decision-making, and for setting policies and procedures for the provision of primary healthcare services in the jail."

24. Additionally, the Agreement stated that QCHC would establish a plan for the identification, treatment and monitoring of detainees with chronic illnesses and special healthcare needs," and required QCHC "to continue 'chronic care clinics' for those detainees identified with specified chronic illnesses and conditions," which included "diabetes" and "hypertension."

25. The Agreement also required QCHC to "maintain, cause, or require being maintained, complete and accurate medical records for each detainee who has received healthcare services."

26. Further, QCHC was required to "supply medications through its pharmaceutical vendor" and "will provide pharmaceutical management, distribution, and policies, and be financially responsible for all formulary and over-the-counter medications."

27. According to the Agreement, the administration of medicine to inmate and detainees was the obligation and responsibility of QCHC, its agents and employees, including Defendants BROWN, HUBBARD, NURSE JULIE, HOLLINGSHEAD, RICHISIN and CANTRELL.

28. On October 28, 2022, at approximately 3:33 p.m., Decedent was booked into the Monroe County jail on an arrest warrant issued approximately 10 days earlier. Decedent's initial court date was set for November 7, 2022.

29. During his initial booking and intake on October 28, 2022, Decedent completed a Medical Questionnaire notifying Defendants: (1) he was diabetic and was on a special diet that is prescribed by a physician; (2) he was presently taking medications; (3) he was under a doctor's care; and (4) he had a history of diabetes. It was also noted in the Medical Questionnaire that Decedent's "condition at intake" "seems good."

30. The QCHC Defendants were made aware at the time that Decedent was booked into the jail that he was a diabetic; was taking medications for his diabetes; and was under a doctor's care.

31. When a diabetic detainee such as Decedent was booked into the Monroe County jail, the Agreement required QCHC to perform an assessment of the detainee; to obtain the detainee's medical and prescription records; and to obtain and administer the necessary medications to treat the detainees serious medical needs.

32. Because Decedent disclosed his diagnosis, prior and current medications, Defendants were required to obtain Decedent's medical and prescription history, some of which were already in the custody of the QCHC Defendants.

33. The Agreement required QCHC Defendants to verify, order and supply Decedent with his prescribed medications.

34. Upon information and belief, soon after intake on October 28, 2022, Decedent was housed in A-pod in cell A14 and QCHC Defendants failed to perform the required medical

assessment of Decedent after his booking and as a result QCHC Defendants failed to order or appropriately administer the medications required to keep Decedent alive.

35. Upon information and belief, another inmate or detainee, housed in A-pod, died of medical complications at the Monroe County jail a few months prior to Decedent's death.

36. Upon information and belief, medications at the Monroe County jail were kept in a medicine cart that remained locked and was kept in a locked room. Only the QCHC Defendants had the key to access the inmate or detainee medicine. Further, only QCHC Defendants were authorized and allowed to prepare and administer the medications to the inmates and detainees.

37. Prior to Decedent's booking on October 28, 2022, QCHC Defendants were aware that Decedent was a diagnosed diabetic; had hypertension; and required medication because QCHC Defendants had completed a full medical assessment on Decedent in July 2022, only four (4) months before, which noted his diabetes and hypertension diagnosis. In fact, QCHC Defendants prescribed Decedent's diabetes medication to be administered daily and one of his diabetes medications to be administered twice daily. The Defendants completed the full medical assessment and had custody, control and access to those prior medical records at the time Decedent was booked and detained in the Monroe County jail on October 28, 2022.

38. Because of Decedent's known diabetes and hypertension diagnosis, the Defendants had an obligation to ensure Decedent had access to uninterrupted medications and prescriptions, including his insulin and hypertension medications, in a timely manner and to allow for continuity of treatment and care and to properly monitor and evaluate Decedent.

39. Defendants were aware that Decedent was a detainee at the Monroe County jail and required diabetes medication and blood sugar monitoring.

40. Defendants were aware or should have been, of the dangers and life threating complications that may arise to a detainee who does not receive his diabetic medication. Those dangers and life-threating complications include diabetic ketoacidosis.

41. Throughout the night of October 30, 2022 and the morning of October 31, 2022 and before, Decedent repeatedly requested medical care but never received any constitutionally appropriate medication or medical care. Upon information and belief, County Defendants responded throughout the night on several occasions to Decedent's cell. County Defendants and QCHC Defendants were obligated to provide the requested medical care and the medical personnel to treat Decedent's serious medical need.

42. County Defendants at all times had an obligation to ensure that Decedent has access to constitutionally appropriate medication and medical care.

43. When Defendant Brown arrived at the jail around 6:00 a.m. for her shift the morning of October 31, 2022, she was met outside by a corrections officer who informed her of Decedent's deteriorating condition. When Defendant Brown entered the jail, she was met by two other corrections officers who told her Decedent had not received his diabetic medication and that his condition was deteriorating.

44. At or about 7:00 a.m., approximately an hour later, Decedent was brought into the jail medical unit in a wheelchair with complaints of "trouble breathing" and that he was a diabetic. Defendant Brown tested Decedent's blood sugar, and the test result showed, "HI," which indicated that Decedent's blood sugar was over 600. When Defendant Brown took Decedent's vitals, Decedents O2 level was 66%, and he was experiencing shortness of breath and was hyperventilating. At some point, Decedent was given 14 units of insulin and at approximately 7:20 a.m., Defendant Brown instructed that Decedent be taken to SWHA emergency room.

45. Instead of an ambulance, Correction Officers loaded Decedent into the back of a Monroe County Sheriff's department transport van and Decedent was taken to the SWHA Emergency Room.

46. When Decedent arrived at the Emergency Room at approximately 7:45 a.m., the correctional officer had to request a SWHA employee to retrieve a wheelchair for Decedent.

47. After some difficulty and a significant passage of time, Decedent was placed in a wheelchair and the corrections officer took him inside the ER.

48. Defendant SWHA receives Medicare funds and operates an emergency department and is subject to the requirements of 42 U.S.C. § 1395dd ("EMTALA").

49. When the corrections officer entered the lobby, there was a significant delay. He went to one check-in desk where he waited but was then told to take Decedent to a second check-in desk where he was again requested to wait and was refused timely admittance.

50. The corrections officer requested the check-in nurse to expedite the matter because Decedent was getting progressively worse and was at that time drooling from his mouth and slumped over in the wheelchair.

51. A SWHA nurse asked if Decedent's appearance was normal, and the corrections officer responded, "No." After more significant delay, the SWHA employees began the check-in process.

52. The corrections officer again requested the check-in nurse to expedite the process but was told Decedent would be admitted to the ER after another patient was taken care of.

53. Decedent was moved in his wheelchair away from the check-in desk to await his turn. After another significant delay, Decedent began to breath shallowly, his eyes rolled into his head and he became unresponsive and had no pulse.

54. CPR was initiated in the ER lobby by the corrections officer until SWHA medical staff finally arrived and attempted to resuscitated Decedent, at which point, Decedent was taken to a room in the ER and emergency treatment finally begun. At that time, Decedent's blood sugar level was in excess of 500.

55. Decedent, an African American male, arrived at the SWHA ER being pushed in a wheelchair by a Monroe County Sheriff's officer corrections officer. The Decedent was in his jail cloths in handcuffs and shackles. Decedent had a serious medical condition that required immediate treatment.

56. Decedent presented to SWHA ER with a serious emergency medical condition and was observed by an ER nurse slumped over in his wheelchair and drooling at the mouth. Upon information and belief, the ER had been made aware that Decedent had not received any diabetes medication in four (4) days, his blood sugar had test over 600 and an O2 saturation of 66%.

57. SWHA failed to timely admit, provide appropriate medical screening and stabilizing Decedent before he went into respiratory arrest, acute kidney failure, shock and diabetes mellitus with ketoacidosis.

58. Decedent, an African-American male detainee of the Monroe County Sheriff's Department, was made to improperly wait in the SWHA ER lobby for a significant amount of time before he was formally admitted and then was required to again wait a significant amount of time until another individual was treated that arrived after Decedent.

59. Decedent remained comatose and on mechanical ventilation support until he was declared brain dead on November 3, 2022.

60. An autopsy was performed on Decedent soon after and his cause of death was determined to be (a) complications of diabetic ketoacidosis and (b) type 1 diabetes mellitus, uncontrolled.

61. At all-times relevant, and upon information and belief, Defendants, QCHC OF TENNESSEE, PLLC., QCHC, INC., QCHC MANAGEMENT SERVICES COMPANY, INC., LADONNA HUBBARD, ASHLEY BROWN, PAM HOLLINGSHEAD, NURSE JULIE, HOLLY CANTRELL, SHERRY RICHESIN, JOHNNY BATES, DONALD C. KERN, MONROE COUNTY, OFFICER NOAH KELLY, OFFICER OWEN HOOPER, OFFICER CODY HARRILL, OFFICER BLAINE KENNEDY, OFFICER DAVID HANNAH, OFFICER RILEY TURPEINEN, OFFICER BRENT PLEMONS, OFFICER THOMAS GRINDLE, OFFICER COLBY WILLIAMS, OFFICER PATRICIA STEPHENS, OFFICER TOMMY REAGAN, OFFICER JOSH DUNCAN, OFFICER JENNA WEBB, OFFICER JERRON HENRY and OFFICER DAVID ANTHONY had either personally observed Decedent or knew or should have known of his deteriorating medical condition. As such, they were aware or should have been aware that Decedent suffered from an objectively serious medical need. And these Defendants' actions or lack thereof were either intentional, in ignoring Decedent's objectively serious medical needs, or reckless in that they failed to act reasonably to mitigate the risk of the objectively serious medical needs posed by Decedent. As such, these Defendants were deliberately indifferent to Decedent's serious medical need.

62. Alternatively, the above Defendants recognized Decedent had an objectively serious medical need and knew or should have known from the facts available to them of Decedent's serious medical need but disregarded the substantial risk the serious medical need

posed to Decedent by failing to take reasonable actions to abate the risk. As such, these Defendants were deliberately indifferent to Decedent's serious medical need.

63. QCHC, at all times relevant, established the policies, practices, customs and usages for the provision of health and medical care to inmates and detainees such as Decedent. As such, QCHC was responsible for employing, training and supervising personnel who would and could appropriately diagnose and treat inmates and detainees at the Monroe County jail who suffered from serious medical needs such as Decedent. In these regards this Defendant was deliberately indifferent to Decedent's serious medical needs.

64. Monroe County, Tennessee failed to properly train and/or supervise the individual officers as to their constitutionally appropriate conduct regarding the recognition of serious medical needs of inmates and detainees such as Decedent. As such, this Defendant was deliberately indifferent to Decedent's serious medical need.

65. Defendants BATES and KERN, at all times relevant, were responsible for appropriately diagnosing and treating inmates and detainees at the Monroe County jail. Upon information and belief, BATES and KERN were the Medical Directors for the jail and were personally responsible for making medical decisions regarding Decedent's medical care and treatment. Additionally, and/or alternatively, BATES and KERN in their capacity as Medical Directors failed to properly train and/or supervise the individual Defendants herein, as to their constitutionally appropriate conduct regarding the recognition of serious medical needs of inmates and detainees such as Decedent and the provision of health care to inmates with serious medical needs, and as such were deliberately indifferent to Decedent's serious medical need.

66. The actions and failures to act, as to all Defendants and as set out above, solely and/or in combination were the proximate cause of the damages suffered by Decedent, to include economic damage, pain, suffering, mental and emotional distress and ultimate death of Decedent.

67. The actions and/or inactions of the Defendants, with the exception of Defendant Monroe County, Tennessee, only were such as to render them liable for punitive damages.

## V. CAUSES OF ACTION

68. The actions of Defendants solely and/or in combination violated the rights of Decedent under the Fourteenth (and/or alternatively under the Eighth) Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 in that they demonstrate the Defendants were deliberately indifferent to Decedent's serious medical needs.

69. Defendant SWHA is liable to Decedent for failure to admit and provide medical care in accordance with the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA").

## VI. RELIEF REQUESTED

70. Plaintiff requests the following relief:

    a. Empanel a jury to try this matter;

    b. Award Plaintiff compensatory damages;

    c. Award Plaintiff punitive damages against the Defendants;

    d. Award Plaintiff's attorneys their attorney fees and costs pursuant to 42 U.S.C. § 1988; and

    e. Award Plaintiff such other and further relief to which she may be entitled.

Respectfully submitted.

        WORTHINGTON & WEISS, P.C.

        s/W. Tyler Weiss
        W. TYLER WEISS [BPR No. 028801]
        409 N. College Street, Suite 1
        Madisonville, Tennessee 37354
        Office: (423) 442-5353
        Fax:    (423) 442-3866
        Email: tweiss@worthingtonweiss.com

*Counsel for Plaintiff*