UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ESTATE OF JOSHUA S. MCCLEARY, BNK OMARII MCCLEARY, Son and Personal Representative of the Estate, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:23-CV-385-CLC-DCP |
| QCHC OF TENNESSEE, PLLC, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Motion to Compel Interrogatory Answers and Document Responses of Defendant Sweetwater Hospital Association [Doc. 99]. Defendant Sweetwater Hospital Association filed a response in opposition to the motion [Doc. 100]. Plaintiff did not file a reply. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, the Court **GRANTS** the motion [**Doc. 99**].

**I.   BACKGROUND**

Plaintiff is the oldest son of Joshua McCleary (hereinafter, "Decedent") [Doc. 1 ¶ 5]. On October 28, 2022, officers booked Decedent in the Monroe County jail pursuant to an arrest warrant [*Id.* ¶ 28]. According to the Complaint, upon booking, the Decedent completed a medical questionnaire stating that "(1) he was diabetic and was on a special diet that is prescribed by a physician, (2) he was presently taking medications; (3) he was under a doctor's care; and (4) he

had a history of diabetes" [*Id*. ¶ 29]. Plaintiff alleges that the "QCHC Defendants failed to perform the required medical assessment of Decedent after his booking" [*Id*. ¶ 34].[1]

"Throughout the night of October 30, 2022[,] and the morning of October 31, 2022[,] and before, Decedent repeatedly requested medical care but never received any constitutionally appropriate medication or medical care" [*Id*. ¶ 41]. After Decedent's condition deteriorated, he was taken to the emergency room at the Sweetwater Hospital Association ("SWHA") [*Id*. ¶ 44]. Plaintiff alleges that upon arrival, however, there was significant delay [*Id*. ¶¶ 49–50]. Correction officers repeatedly asked the SWHA staff to expedite the check in process, but the staff stated that "Decedent would be admitted to the ER after another patient was taken care of" [*Id*. ¶ 52]. While he was waiting, "Decedent began to breath shallowly, his eyes rolled into his head[,] and he became unresponsive and had no pulse" [*Id*. ¶ 53]. At that point, "Decedent was taken to a room in the ER and emergency treatment finally begun" [*Id*. ¶ 54]. Plaintiff alleges that the "Decedent remained comatose and on mechanical ventilation support until he was declared brain dead on November 2, 2022" [*Id*. ¶ 59]. The autopsy determined that he passed away from complications of diabetic ketoacidosis and type 1 diabetes mellitus, uncontrolled [*Id*. ¶ 60].

Based on the above, Plaintiff alleges that Defendants were deliberately indifferent to Decedent's medical needs in violation of the Fourteenth Amendment, or alternatively, in violation of the Eighth Amendment, and pursuant to 42 U.S.C. § 1983 [*Id*. ¶ 68]. In addition, Plaintiff alleges that Defendant SWHA failed to provide medical care pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd [*Id*. ¶ 69].

---

[1] Plaintiff refers to Defendants QCHC of Tennessee, PLLC; QCHC, Inc.; QCHC Management Services Company, Inc.; Ladonna Hubbard; Ashley Brown; Pam Hollingshead; Sherry Richesin; Nurse Julie; Holly Cantrell; Johnny Bates, individually and officially; and Donald C. Kern, individually and officially, as the "QCHC Defendants" [Doc. 1 ¶ 1].

2

On August 9, 2024, Plaintiff served Defendant SWHA with discovery requests [Doc. 99 p. 2; Doc. 99-1 p. 1]. Along with the discovery requests, Plaintiff's counsel sent an email stating that there is no binding Sixth Circuit law that applies the medical peer review privilege [Doc. 99-1 p. 1]. Plaintiff received Defendant SWHA's responses to the discovery requests on September 25, 2024 [Doc. 99 p. 2]. Upon review, Plaintiff found the discovery responses were "rife with peer review privilege assertions" [*Id.*]. "Specifically, Plaintiff takes issues with [Defendant SWHA's] [a]nswers to Interrogatory Numbers 8, 9, 10, 11, 13[,] and its responses to Requests for Production Numbers 8, 11, 12, 13, 14, 15, 16, and 18 where [Defendant SWHA] asserted a privilege under any patient safety, quality improvement, and peer review statute" [*Id.*]. For instance, Defendant SWHA's responses state that it "objects on the basis that this [discovery request] seeks information protected by the relevant patient safety and quality improvement statutes" [Doc. 99-2 p. 11 (citing 42 U.S.C. §§ 299b-21 *et seq.*; *see also* Tenn. Code Ann. [§] 68-11-272")].

On November 10, 2024, Plaintiff's counsel sent an email to defense counsel asking Defendant SWHA to supplement its responses, arguing that there is no federal privilege that protects medical peer review materials [Doc. 99-3 p. 1]. According to Plaintiff, Defendant SWHA did not respond [Doc. 99 p. 2].

Plaintiff moves for an order compelling Defendant SWHA to supplement its answers and responses to discovery [Doc. 99]. Plaintiff argues that "federal law governs issues of privilege under federal causes of action in federal court" [*Id.* at 4 (citation omitted)]. According to Plaintiff, the medical review privilege does not exist under federal law [*Id.* at 5 (citation omitted)]. Given that this case is a § 1983 action, and not a medical malpractice claim, Plaintiff states that "the general approval of a medical peer review process" under the Patient Safety Quality Improvement

3

Act of 2005 does not apply [*Id*. at 5]. Further, because there are no state-law claims, Plaintiff asserts state law is also inapplicable [*Id*. at 5–6].

Defendant SWHA responds in opposition to the motion, stating that "[t]he discovery request contained multiple requests for information and documents that are privileged for purposes of patient safety, quality improvement, or peer review, as codified at 42 U.S.C. § 299b-021" [Doc. 100 p. 1]. It states, "The [Sixth Circuit] and the Eastern District of Tennessee have yet to conclusively rule on the issue of whether or not they will recognize a [m]edical [p]eer [r]eview [p]rivilege" [*Id*. at 3]. Defendant SWHA acknowledges that federal circuit courts have disfavored this privilege but states that those disputes turned on the "fairness of the medical review process itself" [*Id*.]. According to Defendant SWHA, "Several [d]istrict [c]ourts have made distinctions between discrimination and malpractice cases and granted privilege to peer review materials in the malpractice context" [*Id*.]. Defendant SWHA asserts that this "dispute sounds in malpractice" [*Id*.]. It further submits that the cases Plaintiff relies on "involved federal statutes concerning fraud, prisoner's rights and/or arrest" [*Id*. at 4]. Defendant SWHA states, "The materials sought are solely in relationship to Plaintiff's EMTALA claim against [it] and have nothing to do with Plaintiff's § 1983 [d]eliberate [i]ndifference claim" [*Id*.]. Defendant SWHA urges the Court to apply the analysis in *K.D. ex rel. Dieffenbach v. United States*, 715 F. Supp. 2d 587 (D. Del. 2010) [*Id*. at 5–9].

## II.   ANALYSIS

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. Fed. R. Civ. P. 26(b). It states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ.

P. 26(b)(1). Under federal law, the situation here, Rule 501 of the Federal Rules of Evidence governs whether a matter is privilege.[2] It provides:

> The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
>
> • a federal statute; or
>
> • rules prescribed by the Supreme Court.

Fed. R. Evid. 501. "[W]here there is no dispute as to the relevance of the requested information, the burden of establishing that otherwise relevant discovery is privileged is on the party asserting the privilege." *Hubble v. Cnty. of Macomb*, No. CV 16-13504, 2017 WL 11565718, at *2 (E.D. Mich. Aug. 23, 2017), *aff'd*, No. 16-CV-13504, 2017 WL 5952119 (E.D. Mich. Dec. 1, 2017).

As an initial matter, it is not clear to the Court whether Defendant SWHA requests that the Court recognize a medical peer review privilege [*see* Doc. 100 pp. 3–7 (requesting that the Court analyze five factors to determine whether the medical peer review privilege would apply in this case)] or find that the withheld material is protected as "patient safety work product" [*see id*. at 3 (addressing the applicability of federal statutes) and 7 (stating that the material is protected as "patient safety work product"); *see also* Doc. 99-2 p. 11 (objecting on the basis that the information

---

[2] In its discovery responses, Defendant SWHA asserted an objection based on state law, [*See, e.g.*, Doc. 99-2 p. 11 (citing Tenn. Code Ann. § 68-11-272)]. Plaintiff asserts that state privileges are not applicable because it has not alleged a violation of state law [Doc. 99 p. 5]. Defendant does not appear to contest this point [*See* Doc. 100 p. 3]. Regardless, federal law applies as there are no state law claims. *See Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 712 (6th Cir. 2006) ("Where, as here, the underlying claim is based on federal law, federal common law determines the extent of the privilege." (citing Fed. R. Evid. 501)); *see also Allgood v. Baptist Mem'l Med. Grp., Inc.*, No. 19-2323, 2020 WL 86455, at *2 (W.D. Tenn. Jan. 7, 2020) ("Because this is a federal question case, T.C.A. § 68-11-272(c)(1) does not apply."), *aff'd*, No. 219CV02323, 2020 WL 821381 (W.D. Tenn. Feb. 19, 2020).

5

is protected by the "patient safety and quality improvement statutes")]. Regardless, the Court finds that Defendant SWHA's privilege assertions are not well taken.

To the extent Defendant SWHA asks the Court to recognize a medical peer review privilege in this case, the United States Supreme Court has held, "We do not create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence. . . .'" *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990) (ellipses in original) (quoting *Trammel v. United States,* 445 U.S. 40, 51 (1980)). "In making this determination[,] the court must consider whether the privilege serves private and public interests, the evidentiary benefit that would result from denying the privilege[,] and if the states recognize the privilege." *Hall v. Correction Healthcare Cos., Inc.*, No. 1:17CV627, 2018 WL 3743877, at *2 (S.D. Ohio Aug. 7, 2018) (citing *Jaffee v. Redmond*, 518 U.S. 1, 10–13 (1996)).

"The [United States] Supreme Court has expressed reluctance to expand the parameters of privilege law in recent years and many federal courts have declined to recognize a number of proposed privileges." *Id*. (citation omitted). And several courts have addressed the medical peer review privilege. "The weight of authority in the Sixth Circuit and elsewhere is that no medical peer review privilege exists under federal common law." *Allen v. Cuyahoga Cnty.*, No. 1:12CV1659, 2014 WL 434558, at *5 (N.D. Ohio Feb. 4, 2014) (collecting cases); *see also Gulley v. Lapaglia*, No. 3:12-CV-371, 2014 WL 223646, at *1 (E.D. Tenn. Jan. 21, 2014) ("[I]t has been suggested that there is a 'consensus among lower courts and in other circuits that no federal privilege protects medical peer review materials in civil rights or antitrust actions[.]'" (quoting *Veith v. Portage Cnty*, No. 5:11-cv-2542, 2012 WL 4850197, at *2 (N.D. Ohio Oct. 11, 2012)); *see also Allgood v. Baptist Mem'l Med. Grp., Inc.*, No. 19-2323, 2020 WL 86455, at *2 (W.D. Tenn. Jan. 7, 2020) ("Baptist has not identified any caselaw that suggests federal privilege law

recognizes a parallel privilege to the one established by T.C.A. § 68-11-272(c)(1). Indeed, federal courts have repeatedly held no parallel federal privilege exists."), *aff'd*, No. 219CV02323, 2020 WL 821381 (W.D. Tenn. Feb. 19, 2020).

But Defendant SWHA argues that the cases declining to recognize the medical peer review privilege "all implicated federal statutes concerning fraud, prisoner's rights and/or arrests" [Doc. 100 p. 4]. Plaintiff characterizes the Complaint as a civil rights claim in the motion, but Defendant SWHA argues that this is not a civil rights case. Indeed, while Plaintiff has pleaded a violation of § 1983, the claim against Defendant SWHA is for violating EMTALA [*See* Doc. 1 ¶ 68].[3] Defendant SWHA urges the Court to construe Plaintiff's claim as one for medical malpractice, which it contends would support applying the medical peer review privilege here. *See Sevilla v. United States*, 852 F. Supp. 2d 1057, 1058–69 (N.D. Ill. 2012) (recognizing the privilege in a Federal Tort Claims Act medical malpractice case). And while the parties do not address these cases, courts within this circuit have also recognized the privilege in medical malpractice actions. *See Miller v. Uchendu*, No. 213CV02149, 2016 WL 11784214, at *5 (W.D. Tenn. Mar. 21, 2016) ("Particularly, other federal courts have recognized a peer review privilege in medical malpractice actions." (citing *Veith*, 2012 WL 4850197, at *2 (holding that the public interest lies strongly in favor of recognizing a privilege in medical malpractice actions"));  *In re Dep't of Justice Subpoena Duces Tecum To Custodian of Records For Baptist Mem'l Hosp.*, No. 04-MC-018, 2004 WL

---

[3]  Paragraph 68 of the Complaint alleges that Defendants violated 42 U.S.C. § 1983 without referencing a specific Defendant [Doc. 1 ¶ 68]. Section 1983 provides a cause of action against any person who, acting under the color of state law, violates the constitutional rights of another. 42 U.S.C. § 1983. Defendant SWHA is not a government actor, and private actors are generally not liable under 42 U.S.C. § 1983. *See Leta v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, 668 F. Supp. 3d 724, 738 (S.D. Ohio 2023) (explaining when a private actor can be liable under § 1983), *aff'd sub nom. Leta v. TriHealth, Inc.*, No. 23-3406, 2024 WL 229563 (6th Cir. Jan. 22, 2024). Further, paragraphs 1–3 in the Complaint make clear that Plaintiff brings only one claim, the EMTALA claim, against Defendant SWHA [Doc. 1 ¶¶ 1–3].

7

2905391, at *2 (W.D. Tenn. June 22, 2004) (discussing the peer review privilege and noting that the privilege would be recognized in medical malpractice cases)). Plaintiff, however, did not plead medical malpractice and instead relies on the EMTALA [*See* Doc. 1 ¶ 68]. EMTALA cannot be construed as a medical malpractice action. *See Harry v. Marchant*, 291 F.3d 767, 773 (11th Cir. 2002) ("EMTALA was not intended to establish guidelines for patient care, to replace available state remedies, or to provide a federal remedy for medical negligence." (citations omitted)); *Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 142 (4th Cir. 1996) ("EMTALA is not a substitute for state law malpractice actions, and was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence." (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994))); *Hines v. Adair Cnty. Pub. Hosp. Dist. Corp.*, 827 F. Supp. 426, 431–32 (W.D. Ky.1993) ("In other words, Congress did not intend to create a federal tort of negligence or to require the application of a negligence standard in an analysis of either of these federal duties as an alternative to state medical malpractice claims.").

Further, courts within this circuit have declined to recognize the medical peer review privilege in other contexts. For instance, this Court declined to recognize the peer review privilege in a case alleging discrimination and violations of the Family Medical Leave Act. *See Coone v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:16-CV-481, 2017 WL 9476830, at *2 (E.D. Tenn. May 18, 2017) ("In the instant case, the privilege asserted by the Hospital is a peer review privilege. Neither the Sixth Circuit nor the Supreme Court has recognized a federal peer review privilege."). In addition, the Western District of Tennessee, in a case alleging EMTALA claims, held, "Neither the United States Supreme Court nor the Sixth Circuit has recognized a medical peer review privilege under federal common law." *Levans v. Saint Francis Hosp.-Bartlett, Inc.*, No. 15-CV-2142, 2015 WL 11017962, at *3 (W.D. Tenn. Sept. 18, 2015).

8

The Court acknowledges that Tennessee recognizes the medical peer review privilege, *see* Tenn. Code Ann. §§ 63-1-150 & 68-11-272, which "would weigh in favor of the privilege." *Hall*, 2018 WL 3743877, at *3 (finding because Ohio recognized the peer review privilege, "this would weigh in favor of the privilege"); *Gulley*, 2014 WL 223646, at *1 (noting that "comity favors recognizing state law privilege" (citation omitted)). In addition, there is a public interest in "correcting life threatening errors by physicians[.]" *Veith*, 2012 WL 4850197, at *4 (quoting *Weekoty v. United States,* 30 F. Supp. 2d 1343, 1348 (D.N.M.1998)). Even so, in light of the above authority and "given that privileges are strongly disfavored in federal practice, the liberal view of discovery in the federal rules, and the lack of a historical or statutory basis for a medical peer review privilege under federal law," *Allen*, 2014 WL 434558, at *5, the Court finds Defendant SWHA's privilege assertion not well taken.[4]

Turning to the statute, in 2005, Congress passed the Patient Safety Quality Improvement Act of 2005 ("PSQIA").[5] "Congress enacted the PSQIA in an attempt to limit the medical-

---

[4] The Court notes that even if it were to apply the state privilege, Defendant SWHA has submitted no proof establishing that the documents sought are covered under Tenn. Code Ann. § 68-11-272. While some discovery requests seek quality improvement information that appears to be protected [*see, e.g.*, Doc. 99-2 p. 11 (Interrogatory No. 9)], other discovery requests do not appear to seek such information [*see id.* at 12 (Interrogatory No. 10)]. *Cf. Miller v. Uchendu*, No. 213CV02149, 2016 WL 11784214, at *6 (W.D. Tenn. Mar. 21, 2016) ("However, to the extent that the documents were not produced for use by a [quality improvement committee ('QIC') or persons acting on its behalf of a QIC and are otherwise available from original sources, such documents are not privileged. Therefore, without further information, the court cannot say that the documents sought, if any exist, are necessarily privileged under the Act." (citations omitted)); *see also Bowling v. Scott Cty.*, No. 3:04-CV-554, 2006 WL 2336333, at *4 (E.D. Tenn. Aug. 10, 2006) (holding that the hospital defendant seeking to quash production of documents did not make a showing that the documents at issue were produced by a QIC or that the documents would be covered under the Act).

[5] The Court has also considered whether to recognize a medical peer review privilege in light of the intent of the PSQIA as Defendant suggests [*See* Doc. 100 pp. 5–6, 7–8 (citing *Dieffenbach*, 715 F. Supp. 2d at 596)]. In that case, the court recognized a federal peer review privilege, and in doing so, considered the PSQIA. *Dieffenbach*, 715 F. Supp. 2d at 596. The court noted, "Whether or not the [National Institute of Health] review bodies at issue here meet the technical requirements

malpractice exposure of healthcare providers who attempt to learn from their mistakes as part of a patient-safety-evaluation system." *Taylor v. Hy-Vee, Inc.*, No. 15-9718, 2016 WL 7405669, at *2 (D. Kan. Dec. 22, 2016) (citation omitted). In relevant part, it states:

> **(a) Privilege**
>
> Notwithstanding any other provision of Federal, State, or local law, and subject to subsection (c), patient safety work product shall be privileged and shall not be--
>
> > **(1)** subject to a Federal, State, or local civil, criminal, or administrative subpoena or order, including in a Federal, State, or local civil or administrative disciplinary proceeding against a provider;
> >
> > **(2)** subject to discovery in connection with a Federal, State, or local civil, criminal, or administrative proceeding, including in a Federal, State, or local civil or administrative disciplinary proceeding against a provider;
> >
> > **(3)** subject to disclosure pursuant to section 552 of Title 5 (commonly known as the Freedom of Information Act) or any other similar Federal, State, or local law;
> >
> > **(4)** admitted as evidence in any Federal, State, or local governmental civil proceeding, criminal proceeding, administrative rulemaking proceeding, or administrative adjudicatory proceeding, including any such proceeding against a provider; or
> >
> > **(5)** admitted in a professional disciplinary proceeding of a professional disciplinary body established or specifically authorized under State law.

---

for listing as [patient safety organizations], they clearly perform the same functions Congress intended the PSQIA to encourage." *Id.* Defendant SWHA has not offered any facts to support that it performs the same functions Congress intended the PSQIA to encourage. And as further explained below, Defendant SWHA has not offered any facts to support a finding that it has withheld "patient safety work product" as defined by the PSQIA. Given that, the Court finds it would be contrary to the PSQIA to find that the material should otherwise be privileged. *See Herriges v. Cnty. of Macomb*, No. CV 19-12193, 2020 WL 4726940, at *3 (E.D. Mich. Aug. 14, 2020) ("[T]he PSQIA does not broadly protect any healthcare provider work product.").

> **(b) Confidentiality of patient safety work product**
>
> Notwithstanding any other provision of Federal, State, or local law, and subject to subsection (c), patient safety work product shall be confidential and shall not be disclosed.

42 U.S.C.A. § 299b-22. As one court recognized, PSQIA "announces a more general approval of the medical peer review process and more sweeping evidentiary protections for materials used therein." *Dieffenbach*, 715 F. Supp. 2d at 595; *see also K. C. v. Cnty. of Alameda*, No. 22-CV-01817, 2024 WL 4008762, at *1 (N.D. Cal. Aug. 29, 2024) ("The PSQIA is a federal law that establishes a privilege for 'patient safety work product[.]'"); *Johnson v. Cook Cnty.*, No. 15 C 741, 2015 WL 5144365, at *5 (N.D. Ill. Aug. 31, 2015) ("[T]he PSQIA affords a privilege to all documents, communications, and other information that meet the statutory definition of 'patient safety work product.'" (citation omitted)), *objections overruled sub nom. Johnson v. Cook Cnty.*, No. 15 C 741, 2015 WL 14069377 (N.D. Ill. Oct. 29, 2015).[6]

One court has noted, "In the absence of any explicit exception to the plain language of subsections (a) and (b) for federal civil rights actions, it is clear to the Court that the privilege created for patient safety work product is intended to apply across-the-board to all other types of claims." *Tinal v. Norton Healthcare, Inc.*, No. 3:11-CV-596-S, 2014 WL 12581760, at *10 (W.D. Ky. July 15, 2014); *see also Herriges v. Cnty. of Macomb*, No. CV 19-12193, 2020 WL 4726940, at *2 (E.D. Mich. Aug. 14, 2020) ("The Court agrees with *Tinal* and finds that the PSQIA is applicable in § 1983 actions."); *but see United States v. Jackson Madison Cnty. Gen. Hosp.*, No. 12-2226, 2012 WL 12899055, at *3 (W.D. Tenn. Oct. 16, 2012) (declining to find that the PSQIA

---

[6] The court in *Dieffenbach* explained that prior to Congress passing the PSQIA, courts looked to the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 11101 *et seq.*, and "conclud[ed] that federal policy is hostile to a medical review privilege." *Dieffenbach*, 715 F. Supp. 2d at 594 (citation omitted). According to the court, "that legislation no longer represents Congress' final word on the issue of medical peer review." *Id.* at 595.

11

protected the requested material noting, in part, that "there is a significant national interest in punishing doctors who seek to default the government and the taxpayers" (citation omitted)).

Defendant SWHA states, "The PSQIA protects all 'patient safety work product,' an expansive term for which the information and records sought here fit squarely under the decision of" [Doc. 100 p. 7]. But the PSQIA defines "patient safety work product" as follows:

> any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements—
>
> (i) which—
> >  (I) are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; or
> > (II) are developed by a patient safety organization for the conduct of patient safety activities;
> > and which could result in improved patient safety, health care quality, or health care outcomes; or
>
> (ii) which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

42 U.S.C. § 299b-21(7)(A).

"[C]ourts in this Circuit have identified two prongs for determining if the privilege applies: (1) the document is 'created for the purpose of reporting to a patient safety organization' and (2) 'is so reported.'" *Nelms v. Wellpath, LLC*, 667 F. Supp. 3d 560, 563 (E.D. Mich. 2023) (quoting *Penman v. Correct Care Sols., LLC*, No. 5:18-CV-00058, 2020 WL 4253214, at *3 (W.D. Ky. July 24, 2020)). Defendant SWHA has not provided any evidence that the withheld material meets these two prongs. "Courts carefully scrutinize the assertion of the PSQIA privilege and generally require factual assertions to be supported by evidence." *Est. of Hultman v. Cnty. of Ventura*, No. CV2106280, 2022 WL 2101723, at *5 (C.D. Cal. May 16, 2022); *cf. Herriges*, 2020 WL 4726940, at *7-8 (finding the defendant's employee's testimony was insufficient to show that the materials

12

were provided to a patient safety organization and therefore the documents were not protected under the PSQIA ); *Penman*, 2020 WL 4253214, at *4 (finding that the defendant did not provide "necessary information to effectively evaluate whether the [r]eport was [patient safety work product]" because the defendant "failed to state when the [r]eport was created, the reason(s) why this specific [r]eport was created, when it was provided to [the Kentucky Department of Corrections] and why it was provided").

"When courts find that the PSQIA privilege does apply, they base their findings on evidence offered by the party asserting the privilege." *Est. of Hultman*, 2022 WL 2101723, at *5 (citations omitted). Defendant SWHA has not met its burden to show that the PSQIA protects any of the withheld material.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion to Compel Interrogatory Answers and Document Responses of Defendant Sweetwater Hospital Association [**Doc. 99**]. Defendant Sweetwater Hospital Association **SHALL** file supplemental responses to the discovery requests within **fourteen (14) days.** To the extent the responses and/or documents should be confidential, the parties shall meet and confer about an appropriate protective order.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge