UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| OMARII MCCLEARY, | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:23-cv-385 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| QCHC of Tennessee, PLLC, *et al.*, | ) Magistrate Judge Debra C. Poplin |
| | ) |
|     *Defendant*. | ) |

## **M E M O R A N D U M**

Before the Court are cross motions for summary judgment by Plaintiff Omarii McCleary (Doc. 148) and Defendant Sweetwater Hospital Association (Doc. 146).

### I.    **BACKGROUND**

This case arises from the death of Plaintiff's Decedent Joshua McCleary, who died while in the custody of the Monroe County Jail. The facts relevant to the liability of Sweetwater Hospital are as follows. Mr. McCleary was booked into the Monroe County Jail on October 28, 2022, around 3:37 p.m. (Doc. 148-4 at 2.) He completed a medical questionnaire notifying jail personnel that he was diabetic and was presently taking medications. (*Id.*) Throughout the night of October 30, 2022, and the early morning of October 31, 2022, Mr. McCleary's cellmate was "continuously" hitting the intercom button to obtain the attention of the officers on duty that night. (Doc. 148-6 at 4.) On the intercom, Mr. McCleary stated that he had shortness of breath, was diabetic, and needed assistance. (*Id.*; Docs 149-5, 148-6 at 5.) Male rovers, the correction deputies who make rounds, attempted unsuccessfully to take his blood sugar. (Doc. 148-6 at 5; Doc. 172 at 8.) The officers on duty decided to check on Mr. McCleary in the morning. (Doc. 148-6 at 5.)

In the morning, Mr. McCleary was experiencing more blood sugar problems and was brought into the jail's medical unit. He was seen by Nurse Ashley Brown, who had arrived that morning for her shift. (Doc. 148-14.) A test showed he had high blood sugar and low blood oxygen levels. (Doc. 148-4, at 3–4.) Nurse Brown contacted Nurse Linda Hubbard, a QCHC nurse, by telephone. (Doc. 148-4 at 4.) She advised that he go to the hospital. (*Id.*) Nurse Brown called Sweetwater Hospital ahead of his arrival to relay the information about Mr. McCleary's blood sugar. (*See* Doc. 148-14 at 1; Doc. 172 at 12.) Officer David Anthony transported Mr. McCleary to the hospital, where they arrived at 7:54 a.m. (Doc. 148-15 at 1.)

Upon arrival, Officer Anthony told the hospital staff member performing intake that Mr. McCleary had high blood sugar and did not receive his medication on time. (Doc. 148-8 at 14.) Officer Anthony told the hospital staff member that the jail was faxing over Mr. McCleary's information, and the staff member responded that the information had not come through yet. (Doc. 148-8 at 14.) The interaction lasted approximately three to five minutes. (*Id.*; Doc. 172 at 13.) Officer Anthony again told the staff member that Mr. McCleary needed to be seen soon and that he was progressively getting worse. (*Id.* at 15; Doc. 148-16 at 1.) At some point, Officer Anthony was told that Mr. McCleary would be addressed next after an ambulatory patient who had just arrived. (Doc. 148-16 at 1.) While waiting, Mr. McCleary lost consciousness in the waiting room and Officer Anthony started chest compressions. (*Id.*) A few seconds later, at 8:04 a.m., the crash cart arrived. (*Id.*; Doc 143 at 4.) Mr. McCleary was triaged and moved for treatment. (Doc. 143 at 4). He was initially treated at Sweetwater Hospital and then transferred to Tennova North. The treatment was unsuccessful and three days later he was pronounced dead. (Doc. 148-17 at 1). He died from complications of diabetic ketoacidosis due to uncontrolled Type 1 diabetes mellitus. (*Id.*)

2

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether summary judgment is warranted, courts must "draw all reasonable inferences in favor of the nonmoving party." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 316 (6th Cir. 2014). The court should "consider whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). While the movant bears the burden of establishing that there is no genuine dispute of material fact, he "can meet that standard by showing that the non-moving party lacks evidence to support an essential element of her case." *Randle v. Lewis,* 2025 U.S. App. LEXIS 10728 (6th Cir. 2025). However, "a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record." *Celotex Corp. v. Catrett*, 77 U.S. 317, 332 (1986).

## III. DISCUSSION

Plaintiff no longer asserts improper-stabilization claims. (Doc. 163 at 8). Instead, he only pleads a failure to properly screen under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Plaintiff argues that (1) the interval between arrival and treatment supports an EMTALA violation, and (2) the failure to act more quickly with pre-arrival notice supports an EMTALA violation. (Doc. 148. At 22-24.) Defendant Sweetwater Hospital argues that (1) the interval between arrival and treatment does not support an EMTALA screening violation, and (2) Plaintiff's claims fail as a matter of law due to the absence of evidence regarding improper motive. (Doc. 146 at 5-12.)

3

## A. The interval between arrival and treatment does not support an EMTALA violation because there is no evidence of improper motive.

EMTALA requires doctors and hospitals to provide "an appropriate medical screening examination." 42 U.S.C. § 1395dd(a). The Court of Appeals for the Sixth Circuit has defined the word "appropriate" in light of EMTALA's legislative history. EMTALA "came from highly publicized incidents where hospital emergency rooms allegedly, based only on a patient's financial inadequacy, failed to provide a medical screening that would have been provided a paying patient." *Cleland v. Bronson Health Care Grp., Inc.*, 917 F.2d 266, 268 (6th Cir. 1990). In discussing this history, the Court of Appeals held that the word appropriate "precludes resort to a malpractice or objective standard of care." *Id.* at 272. Rather, "appropriate" refers to "the motives with which the hospital acts." *Id.* The operative question is whether the "outcome would have been different for a patient of any other characteristics." *Id.* This is not a standard of negligence.

Plaintiff, however, is essentially making a standard-of-care claim. Plaintiff argues that "Defendant Anthony was not met by staff prepared to deal with a patient with a 66% oxygen saturation level" and that he "had to wait several minutes." (Doc. 163 at 5–6.) Plaintiff's brief relies heavily on this standard-of-care analysis. Plaintiff argues that "the hospital has presented no evidence in the record that . . . its screening standard examination standard for someone suffering organ failure from diabetic ketoacidosis and sepsis with a sub 70 O2 saturation is approximately ten (10) minutes, despite having pre-arrival notice," but that "if this is the case, then [Sweetwater Hospital] is *per se* not EMTALA compliant." (*Id.* at 8). But EMTALA imposes no standard of care. *See Romine v. St. Joseph Health Sys.*, 541 Fed. Appx. 614, 620 (6th Cir. 2013) ("[W]e did not impose a standard of care. *Cleland* held only that all patients arriving at emergency rooms must receive substantially the same standard of care."). Even if the hospital was not adequately prepared to address a patient with Mr. McCleary's oxygen saturation level, or if hospitals generally

4

react in a more expeditious manner when given notice of a patient's condition pre-arrival, or if the wait was unduly long, this evidence all goes to whether the hospital followed the requisite standard of care.

Plaintiff has not provided any evidence of improper motive as is required by EMTALA. Plaintiff argues that "the above-described treatment was *prima facie* discrimination under EMTALA given [Mr. McCleary's] status as an indigent, African American inmate and the facial violation of EMTALA pre-arrival triage standards." (Doc. 163 at 9.) But status alone does not provide evidence of an EMTALA claim. There must be evidence of "disparate treatment based on improper motive." *Dumphord v. Gabriel,* 2021 U.S. Dist. LEXIS 207242 (E.D. Ky. 2021). Plaintiff has merely shown that he was an African-American, indigent male who was wearing jail clothes, handcuffs, and shackles. But mere status or presentation is not enough; Plaintiff must show that his status made a difference in how he was treated.

EMTALA screening claims require a specific type of evidence. They require a plaintiff to prove he was treated differently than other similarly situated patients. *See Glenda Anderson v. Mem'l Hosp.* (2007 U.S. Dist. LEXIS 116591) (E.D. Tenn. 2007) ("[A] plaintiff's claim under § 1395dd(a) fails if she does not allege (and prove, at an appropriate stage of the litigation) that she was treated differently than other similarly situated patients."). The closest piece of evidence Plaintiff has to suggest he was treated in a discriminatory fashion is that he was treated after another "ambulatory" patient who arrived after Mr. McCleary. (Doc. 148-16 at 1.) But Plaintiff presents no evidence that this other patient was similarly situated yet treated differently. As the Court of Appeals has noted, "common sense dictates that a hospital should not be penalized for differentiating between patients based on proper motives. A proper motive would be, for instance, that one patient presented a more serious condition than another and merited a more thorough or

5

more expedited screening for that reason." *Romine*, 541 Fed Appx. at 620. Plaintiff has not provided evidence about this patient other than the fact that he was ambulatory and treated before Mr. McCleary. Merely being ambulatory does not establish that the other patient's condition was a lower level of seriousness such that the hospital's decision to treat the ambulatory patient first is evidence of discrimination. *See id.* Without evidence that the patient who arrived after Mr. McCleary had a substantially similar or less serious condition yet was treated differently, Plaintiff's claim cannot proceed.

Allowing Plaintiff's status-based claim to proceed would contradict *Cleland* and suggest general malpractice claims could proceed under EMTALA for all those who could *possibly* be subject to discrimination, in other words, for all those who occupy a particular status group. But EMTALA does not provide an avenue for malpractice claims for those who have a particular status in society. There must be evidence of improper motive, and here, there was none.

### B. The pre-arrival notice does not support an EMTALA violation.

Plaintiff asserts that the fact that Sweetwater Hospital was given pre-arrival notice of Mr. McCleary's condition creates a different standard under EMTALA. Plaintiff argues that there was a facial violation of EMTALA because "[p]re-arrival notice that a patient has specific, serious symptoms triggers a different standard for the hospital's conduct on arrival than the standard for an individual who arrived without notice." (Doc. 163 at 5.)

But Plaintiff provides no case law to support this assertion, and the Court is unaware of any case law that supports such a heightened standard. Indeed, as stated above, the Court of Appeals has emphatically found that EMTALA does not impose any standard of care. *See Romine*, 541 Fed. Appx. at 620.

6

Case 3:23-cv-00385-CLC-DCP   Document 223   Filed 09/22/25   Page 6 of 7   PageID #: 2598

While Plaintiff points to an expert report by Dr. Kenny Stein that discusses certain "standard" preparation when a hospital is given pre-arrival notice, (Doc. 148-12 at 5), Dr. Stein's analysis only discusses potential violations of *stabilization* obligations, which Plaintiff is no longer pursuing. *See id.* ("In my opinion, these failures . . . constitute independent breaches of EMTALA's stabilization obligations."). His report never refers to the appropriate standards considered under a screening claim. Furthermore, even if Dr. Stein's report did refer to standards regarding hospital screening, that evidence would not be relevant for an EMTALA screening claim, which does not ask whether hospitals acted in accordance with national standards or in accordance with best practices. Therefore, the fact that Sweetwater Hospital was given pre-arrival notice does not change the EMTALA analysis. *See Elmhirst v. McLaren N. Mich.*, 726 Fed. Appx. 439 (6th Cir. 2018) (discussing the Sixth Circuit's approach as one intended to distinguish a cause of action under EMTALA from a state-law medical malpractice claim).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment as to liability against Sweetwater Hospital (Doc. 148) will be **DENIED IN PART** as to Sweetwater Hospital, and Sweetwater Hospital's motion for summary judgment (Doc. 146) will be **GRANTED**. Plaintiff's claims against Sweetwater Hospital will be **DISMISSED**.

SO ORDERED.

ENTER.

/s/_____
CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE