UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| OMARII MCCLEARY, | ) |
| *Plaintiff*, | ) |
| | ) Case No. 3:23-cv-385 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| QCHC OF TENNESSEE, PLLC, *et al.*, | ) Magistrate Judge Debra C. Poplin |
| | ) |
| *Defendant*. | ) |

**M E M O R A N D U M**

Before the Court are cross motions for summary judgment by Defendant Nurse Ashley Brown ("Nurse Brown") (Doc. 140) and by Plaintiff Omarii McCleary (Doc. 148). Each party responded to the other's motion. (Docs. 162, 168.)

**I.   BACKGROUND**

   **A.   Factual Background**

This case arises from the death of Joshua McCleary while he was a pretrial detainee at Monroe County Jail in Monroe County, Tennessee, between Friday, October 28, and Monday, October 31, 2022.

Nurse Brown was the nurse on duty at Monroe County Jail that weekend. (Doc. 148-11 at 10.) Nurse Brown was a subcontractor employed by QCHC of Tennessee, which was the medical vendor for Monroe County Jail. (Doc. 169 at 4.)

Decedent Mr. McCleary arrived at Monroe County Jail for booking that Friday around 3:37 p.m. (Doc. 169 at 5; Doc. 148-4 at 2.) Upon intake, Senior Officer Brent Plemons filled out an intake form which included a medical questionnaire. (Doc. 148-5 at 4). That form has a note that

reads "inmate states diabetes." (Doc. 148-4 at 1.) It also indicates a "yes" to the question, "Is he-she presently taking medications?" (*Id.*)

The procedure for completed intake forms is disputed. According to Pamela Hollingshead, a nurse who worked for QCHC in Monroe County Jail, nurses would go to the booking counter, retrieve the intake records, and categorize the patients who needed to be seen within twenty-four hours and who needed to be seen within seven days or longer. (Doc 148-11 at 14–15.) Those with insulin-dependent diabetes would have been triaged, according to QCHC's training, within twenty-four hours. (*Id.*) That twenty-four-hour window would have been "automatic," meaning that a nurse would be required to triage a patient within twenty-four hours. (*Id.*)

But according to Nurse Brown, the procedure was different. The nurses would review the forms periodically over the course of several days and triage them as needed. (Doc. 153-2 at 9.) On Nurse Brown's account, the correctional officers would contact the nurses if a detainee had immediate medical needs, such as if they needed to get back on their medication. (Doc. 153-2 at 9, 14.) She said that to ensure inmates receive their medication, the booking unit would have to call the medical unit to let them know and alert them to any such cases. (Doc. 153-2 at 13.)

The series of events that occurred after Mr. McCleary was booked and the intake form was filled out is also disputed. Officer Plemons states that he was "a hundred percent certain" that he "promptly" called Nurse Brown to notify her that Mr. McCleary was a diabetic after filling out the intake form. (Doc. 148-5 at 6, 8.) And according to additional evidence Plaintiff puts forward, Nurse Brown did try to see Mr. McCleary on Saturday, October 29. According to Nurse Hollingshead, Nurse Brown asked Officer Cameron Myers on that Saturday to bring Mr. McCleary to the medical unit so she could evaluate him. Officer Myers brought the wrong inmate and never brought Mr. McCleary. (Doc. 148-11 at 16–17).

2

But Nurse Brown maintains that the very first time she learned of Mr. McCleary's condition was the morning of Monday, October 31. (Doc. 148-14 at 1.) She denies that the initial phone call from Officer Plemons even happened. (Doc. 153-2 at 10, 16.) In fact, she said no officer from Friday, October 28, through Monday, October 31, told her there was an inmate who was diabetic and needed medication. (*Id.* at 16.) She also denies the incident with Officer Myers bringing the wrong inmate happened. (Doc. 169 at 10.)

. The time Nurse Brown arrived at the medical unit for a morning shift on Monday, October 31, is disputed. The time sheet reports her arrival at 5:07 a.m. (Doc. 148-2 at 1), while she places her arrival at 6:00 a.m. (Doc. 148-14 at 1.) Regardless, that morning, officers informed Nurse Brown that Mr. McCleary was "complaining of diabetes and complications of that," and they would be bringing Mr. McCleary to her for evaluation. (Doc. 153-2 at 19.) Mr. McCleary was in "visible distress" and told Nurse Brown he was an insulin-dependent diabetic. (*Id.*) His blood sugar read "HI." (Doc. 148-14 at 1.) She called a nurse practitioner, who told Nurse Brown to give him insulin and send him to the hospital. (*Id.*) Nurse Brown called the shift sergeant, who said Mr. McCleary would be sent to the hospital using the department's own transportation van. (*Id.*; *see also* 153-2 at 16). She also called the hospital ahead of his arrival to advise of his condition. (Doc. 148-14 at 1.)

Mr. McCleary continued to deteriorate at Sweetwater Hospital, (Doc. 148-16 at 1), and was transferred to Tennova North. Three days later, he was pronounced dead from complications of diabetic ketoacidosis due to uncontrolled Type 1 diabetes mellitus. (Doc. 148-17 at 1.)

B.     **Procedural Background**

Mr. McCleary's son and the personal representative of his estate, Omarii McCleary, filed this lawsuit on October 30, 2023. (Doc. 1.) He sued several officers of the jail, Monroe County,

3

Case 3:23-cv-00385-CLC-DCP   Document 228   Filed 09/26/25   Page 3 of 13
PageID #: 2609

QCHC, and several nurses and doctors at QCHC, including Nurse Brown. On July 25, 2025, Nurse Brown filed a motion for summary judgment. (Doc. 140.) She argues that summary judgment is warranted because she was not a state actor and she was not deliberately indifferent to Mr. McCleary's serious medical needs as a matter of law. Also on July 25, 2025, Plaintiff filed a motion for partial summary judgment against several defendants, including Nurse Brown. (Doc. 148.) He alleges that, as a matter of law, Nurse Brown was deliberately indifferent to Mr. McCleary's serious medical needs. Plaintiff responded to Nurse Brown's motion for summary judgment on August 13, 2025. (Doc. 162.) Nurse Brown responded to Plaintiff's motion for partial summary judgment on August 15, 2025. (Doc. 168.) Neither filed a reply.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether summary judgment is warranted, courts must "draw all reasonable inferences in favor of the nonmoving party." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 316 (6th Cir. 2014). In doing so, the court should consider "the plethora of material available in the record" to determine whether the moving party is entitled to judgment as a matter of law, including "pleadings, depositions, answers to interrogatories, written admissions, transcripts of evidence, and written stipulations of fact." *Doe v. Univ. of Ky.*, 111 F. 4th 705, 715 (6th Cir. 2024). The court should "consider whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). While the movant bears the burden of establishing that there is no genuine dispute of material fact, she "can meet that standard by showing that the non-moving party lacks evidence to support an essential element of her case."

4

*Randle v. Lewis,* 2025 U.S. App. LEXIS 10728 (6th Cir. 2025). However, "a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record." *Celotex Corp. v. Catrett*, 77 U.S. 317, 332 (1986).

## III. DISCUSSION

### A. Nurse Brown is a state actor for purposes of Plaintiff's § 1983 claim

Nurse Brown first claims that she was not a state actor, and therefore cannot be held liable under 42 U.S.C. § 1983. Section 1983 only imposes liability on those acting under color of law, which is synonymous with the Fourteenth Amendment's state-action requirement. 42 U.S.C. § 1983; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). For a defendant to be acting under the color of law, his or her actions must be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922(1982). "State employment is generally sufficient to render the defendant a state actor." *Id.* But even contractors can be considered state actors and face liability under § 1983. In *West v. Atkins*, 487 U.S. 42, 54 (1988), the Supreme Court has held that a private physician who provided orthopedic services to inmates pursuant to a contract acted under the color of state law and could be sued under § 1983. The Court found that the state "employs physicians . . . and defers to their professional judgment" to fulfill its constitutional obligations, and that "by virtue of this relationship, effected by state law," the doctor "is authorized and obliged to treat prison inmates." *Id.* at 55. Because it is "only those physicians authorized by the State to whom the inmate may turn," any resulting deprivation is "caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish [the plaintiff] by incarceration and to deny him a venue independent of the state to obtain needed medical care." *Id.* The Supreme Court took care to note that "the fact that the State employed respondent pursuant to a contractual arrangement" did not alter the analysis. *Id.*

5

The Court of Appeals for the Sixth Circuit has applied *Atkins* to situations similar to the one at hand. In *Harrison v. Ash,* 539 F.3d 510 (6th Cir. 2008), the county prison contracted with Correctional Medical Services to provide medical services and personnel for the facility. *Id.* at 514. After an inmate died, his personal representative sued the nurses on duty under § 1983. *Id.* at 515-16. The Sixth Circuit held that the nurses were state actors for purposes of § 1983. *Id.* at 521 (citing *Atkins*, 487 U.S. at 56).

Nurse Brown was employed by QCHC as a contractor.[1] (Doc. 153-2 at 23; Doc. 169 at 4.) QCHC contracted with Monroe County Jail, just like Correctional Medical Services contracted with the county jail in *Harrison*. She was carrying out the duties of the jail to provide adequate medical care to its prisoners and was authorized by the state of Tennessee to treat prison inmates through a contract. *See Atkins*, 487 U.S. 42 (1988). Therefore, any resultant deprivation of a right is fairly attributable to the government entity. Nurse Brown qualifies as a state actor under § 1983.

**B.     There are genuine issues of material fact as to whether Nurse Brown was deliberately indifferent to a serious medical need in violation of Mr. McCleary's Fourteenth Amendment rights.**

Plaintiff alleges a violation of Mr. McCleary's Fourteenth Amendment rights and, alternatively, his Eighth Amendment rights. Generally, the claims of pretrial detainees are brought under the Fourteenth Amendment because pretrial detainees . . . cannot be punished at all, much less 'maliciously and sadistically.'" *Brawner v. Scott Cnty.*, 141 F.4th 585, 592 (6th Cir. 2021).

But the standard for this Fourteenth Amendment violation is in part derived from the Eighth Amendment. The Eighth Amendment imposes duties on prison officials, who must "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S.

---

[1] Nurse Brown worked through a staffing agency called Favorite Healthcare. However, her contracts were with QCHC. (Doc. 153-2 at 3, 23.) She would use Favorite Healthcare to pick up shifts, and they would offer contracts or per diem shifts with various entities. (Doc. 153-2 at 26.)

6

825, 832–33 (1994). "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A prison official violates the Eighth Amendment when the deprivation is sufficiently serious and the official demonstrates deliberate indifference to inmate health and safety. *Farmer*, 429 U.S. at 834.

For Eighth Amendment claims, there is a subjective standard requiring officials to both know of and disregard an excessive risk to inmate health and safety. *Id.* But for Fourteenth Amendment claims such as the present one, that standard is different. This follows from the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which found that an objective standard applies for Fourteenth Amendment claims by pretrial detainees. The Court of Appeals held in *Brawner* that for this type of claim, an objective standard applies. *Brawner v. Scott Cty.*, 141 F.4th 585, 592 (6th Cir. 2021).

In the Sixth Circuit, to show that an official violated a pretrial detainee's right to adequate medical care, a plaintiff must show that (1) the plaintiff had a sufficiently serious medical need, and (2) each defendant acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023). Reckless inaction in the face of an obvious need is enough to proceed to a jury. *Id.* at 320; *see also Grote v. Kenton Cnty.*, 85 F.4th 397, 405 (6th Cir. 2023) (restating the second prong of the test that "the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or recklessly failed to act reasonably to mitigate the risk the serious medical need posed.") The Court will address both prongs in turn.

1. **Objectively serious medical need**

7

A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022). It must also be "obvious to trained medical personnel." *Hodges v. Abram*, 138 F.4th 980, 988 (6th Cir. 2025).

The Court of Appeals has found that diabetes is a sufficiently serious medical condition. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). Furthermore, Mr. McCleary's condition was "diagnosed by a physician as mandating treatment" and was "proven by verifying medical evidence," which can satisfy the objective component even for non-obvious medical needs. *See Hodges,* 38 F.4th at 988. Even Nurse Brown testified that untreated diabetes can cause diabetic ketoacidosis, which can be "life-ending." (Doc. 153-2 at 5). Therefore, having diabetes would count as a sufficiently serious medical condition.[2]

### 2. Deliberate Indifference

There is a genuine dispute of material fact whether Nurse Brown knew Mr. McCleary was a diabetic and, knowing this information, whether she failed to perform an intake or triage him upon his arrival and whether she failed to distribute his insulin for four days.

Nurse Brown argues that she was not deliberately indifferent, as a matter of law, because she "reasonably was not aware that Mr. McCleary was in need of any immediate care until she was told about his condition on [Monday,] October 31." (Doc. 141 at 13–14.) She also argues that she was, at most, careless, because "corrections officers . . . were supposed to call medical staff or otherwise bring to their attention any newly-booked inmates who had serious medical conditions." (*Id.*) But there is a factual dispute about the communication she received prior to October 31,

---

[2] Whether Nurse Brown knew of this medical condition is a question for the second prong of the test, which refers to the state of mind of the Defendant's when presented with a high risk.

2022, and whether she was notified by an officer about Mr. McCleary's medical condition. There is evidence in the record that Nurse Brown received a phone call from Officer Plemons notifying her that a patient was diabetic. (Doc. 148-5 at 5–6.) And even if this phone call was not received, there is evidence that Nurse Brown should have reviewed the intake form and triaged Mr. McCleary within twenty-four hours. (Doc. 148-11 at 14–15.)

There is also evidence that Nurse Brown attempted to do Mr. McCleary's medical intake and examination and requested that Officer Myers bring Mr. McCleary to the medical unit on Saturday. (Doc. 148-11 at 16–17.) But according to Nurse Hollingshead, Officer Myers brought the wrong inmate and he never brought Mr. McCleary back up. (*Id.*) In this version of events, Nurse Brown never requested that Officer Myers retrieve the correct inmate. (*Id.*) There is further evidence that Nurse Brown was informed about Mr. McCleary's condition on her way into the building on Monday morning but did not see him for nearly two hours after her arrival. (148 at 1.)

Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Nurse Brown was notified of Mr. McCleary's condition days earlier than October 31, 2022, and failed to act, knowing that Mr. McCleary was a diabetic who needed insulin. There are combinations of the disputed facts, from the phone calls Nurse Brown may have received, to the incident where she supposedly received the wrong inmate, to the time period between her arrival at the hospital on the morning of Monday, October 31, to the time she treated Mr. McCleary, that could lead a reasonable jury to find deliberate indifference. Nurse Brown is not entitled to summary judgment.

But the relevant factual disputes also preclude granting Plaintiff summary judgment. There is evidence in the record that Nurse Brown never received a phone call from Officer Plemons notifying her that there was a diabetic patient in the hospital. (Doc. 153-2 at 10; Doc. 134 at 5.)

9

Case 3:23-cv-00385-CLC-DCP   Document 228   Filed 09/26/25   Page 9 of 13
PageID #: 2616

Nurse Brown stated that, contrary to Nurse Hollingshead's assertion about the policy regarding intake forms (Doc. 148-11 at 14), officers were to call medical to let them know if there were patients with medical conditions that needed to be addressed immediately; otherwise, they would review the intakes within a few days. (Doc. 153-2 at 9.) There is evidence that Nurse Brown never received any phone call upon Mr. McCleary's booking, during the day, or throughout the night. (*Id.* at 16.)

There is also evidence that Officer Williams either never made a phone call on the night of October 30, 2022 through the morning of October 31, 2022, or that he called Nurse Hollingshead instead. (Doc. 148-7 at 5, 148-6 at 10.) And there is evidence that Nurse Brown never attempted to see Mr. McCleary on Saturday, October 29, 2022, and that the incident with the wrong inmate did not occur. (Doc. 169 at 10.) According to Nurse Brown, the first time she was aware of Mr. McCleary's condition was when she arrived at her shift around 6:00 a.m. (Doc. 148-14 at 1.) And there is evidence that Nurse Brown saw Mr. McCleary less than an hour after her arrival, gave him insulin, requested that he be transported to the hospital in an ambulance instead of a van, and called the hospital ahead of time. (Doc. 153-2 at 16.)

A jury could decide that the breakdown in communication was among the officers, not with Nurse Brown. They could also find that Nurse Brown reasonably did not know, and would not have had reason to know, about Mr. McCleary's condition until the morning of Monday, October 31. A reasonable jury could find, therefore, that Nurse Brown was not deliberately indifferent to Mr. McCleary's medical needs. Plaintiff is not entitled to summary judgment against Nurse Brown.

**C. The evidence to support Plaintiff's claim would be admissible at trial.**

10

Case 3:23-cv-00385-CLC-DCP    Document 228    Filed 09/26/25    Page 10 of 13
PageID #: 2616

Nurse Brown, in moving for summary judgment, states that "Plaintiff will argue that Ms. Brown was deliberately indifferent to Mr. McCleary's care in failing to evaluate him prior to Monday morning, but this allegation . . . is supported by only hearsay." (Doc. 141 at 11.) Nurse Brown does not identify which relevant pieces of evidence are hearsay or explain what makes them hearsay. Plaintiff did not address hearsay in his response brief, but he did present evidence to support his claim against Nurse Brown. Nurse Brown did not file a reply brief to identify any of this evidence as hearsay or otherwise.

It is "well established that a court may not consider hearsay when deciding a summary judgment motion." *Tranter v. Orick*, 460 Fed. Appx. 513, 514 (6th Cir. 2012). The evidence need not be in admissible form, but its content must be admissible. For example, "deposition testimony will assist a plaintiff in surviving a motion for summary judgment, even if the deposition itself is not admissible at trial, provided substituted oral testimony would be admissible and creates a genuine issue of material fact." *Bailey v. Floyd Cnty. Bd. Of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

Hearsay is an "out-of-court statement offered to prove the truth of the matter asserted." *Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys. Inc.*, 696 F. App'x 717, 721 (6th Cir. 2017). A statement that is not offered to prove the truth of the matter asserted but is offered to prove something else, like notice or knowledge, is definitionally not hearsay. *See* Fed. R. Evid. 801(c)(2).

The Court finds Plaintiff's evidence creating a genuine dispute of material fact does not constitute inadmissible hearsay. The evidence of correctional officers showing Nurse Brown was on notice of Mr. McCleary's condition before October 31, 2022, falls into the category of definitional non-hearsay. For example, the Court considers Officer Colby Williams's statement

that he called the on-call nurse on the night of Sunday, October 30, through Monday, October 31, to report Mr. McCleary's medical condition. (Doc. 148-11 at 5, 12–13.) Plaintiff is not using Officer Williams's purported statement to Nurse Brown for the truth of the matter asserted–that Mr. McCleary was actually diabetic. Rather, Plaintiff is using the statement to show that the call was made, and that Nurse Brown was on notice of what he said. *See, e.g. ForeWord Magazine, Inc. v. OverDrive, Inc.*, 2011 U.S. Dist. LEXIS 125373 at *14 (W.D. Mich. 2011) (finding that documents sent to defendant alleging copyright infringement used to show that plaintiff put defendant on notice of alleged infringement were not hearsay). An out-of-court statement used "merely to show that the defendant was placed on notice is clearly not hearsay." *Id.*

An opposing party's statement is also definitionally not hearsay. Fed. R. Evid. 801(d)(2). Plaintiff submits that Nurse Hollingshead testified in her deposition that Nurse Brown told her about the incident in which Officer Myers brought Nurse Brown the wrong inmate. (Doc. 153-12 at 62.) Because Plaintiff is offering Nurse Brown's own statement against, and because Nurse Hollingshead could testify to the statement in court, this would be admissible as a statement of a party opponent.

The Court cannot readily identify any other statements that facially cause a hearsay concern, and as stated above, Nurse Brown has not identified any hearsay statements specifically. The Court concludes that the evidence Plaintiff has presented to show a genuine dispute of material fact does not constitute inadmissible hearsay.

### IV. <u>CONCLUSION</u>

The parties' cross motions present many factual disputes about the weekend of October 28through October 30, 2022. It is disputed who knew what information, who was required to act, and where communication may have broken down to lead to Mr. McCleary's going four days

without insulin.  These factual disputes make summary judgment inappropriate as to both Plaintiff and Nurse Brown, and these significant issues of material fact must be decided by a jury.

Because there are genuine issues of material fact as to Nurse Brown's alleged liability, the Court will **DENY** Nurse Brown's motion for summary judgment (Doc. 140) and **DENY** Plaintiff McCleary's motion for partial summary judgment **IN PART as** to Nurse Brown (Doc. 148).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

13

Case 3:23-cv-00385-CLC-DCP    Document 228    Filed 09/26/25    Page 13 of 13
PageID #: 2619